CRESCENCIO RODRÍGUEZ RAMÍREZ, minor represented by his mother RAMONA RAMÍREZ MATOS, Plaintiff and Appellee, v. ANGEL M. FRANQUI VIERA ET AL., Defendants and Appellants.

No. 523. Decided December 10, 1962.

*Rafael Martínez Alvarez, Jr.,* and *Alex Gonzálcz* for appellants.
*P. Roldán Figueroa* and *Daisy Ruiz Roldán* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Ramona Ramírez Matos, in her capacity as mother with patria potestas over her son Crescencio Rodríguez Ramírez, brought an action to recover damages assessed at $6,000, allegedly sustained by her son as the result of an accident which occurred on December 11, 1959, through the carelessness and negligence of the chauffeur, codefendant Angel M. Franqui Viera, while operating a motor vehicle belonging to his employer, codefendant Caguas Button Company. Defendants denied "generally and specifically each and everyone of the facts alleged in the complaint," and as special defenses they alleged that the accident was due "to plaintiff's negligence and recklessness, or at least that he was negligent and that his negligence contributed to its cause."

The case went to trial. The trial court sustained the complaint awarding to plaintiff child $2,000 as compensation for the damages sustained and $300 for attorney's fees, "without [*sic*] costs."

In this petition for review defendants maintain that the trial court erred (1) in failing to apply to the case at bar the theory of unavoidable accident; (2) in concluding that the accident was due to the chauffeur's carelessness and negligence; and (3) in unduly applying the case law to the facts proved.

Since the correctness of the superior judge's findings of fact is expressly accepted, except for a slight detail which according to appellants themselves "is not controlling in the

decision of this case," it is convenient to copy them. Their text is as follows:

### "FINDINGS OF FACT

"1. In the afternoon of December 11, 1959, on a narrow concrete bridge with metal railings located at Km. 1, Hm. 1 on the Caguas-Aguas Buenas road, a group of some eight boys of tender age were 'quarreling,' calling each other insulting words, pushing each other with the hands, and moving constantly. In that group of boys was plaintiff Crescencio Alejandro Ramírez who was approximately nine years of age. Codefendant Ángel M. Franqui was at the time traveling along that road on business of his occupation or employment with codefendant Caguas Button Company, operating a De Soto pickup wagon, license plate C 304–830, belonging to that enterprise. This vehicle was insured under a policy issued by Carolina Casualty Company covering the risk involved in the facts of this case.

"2. Upon approaching the bridge in question, Franqui was driving at about 30 miles an hour and upon entering he reduced the speed to 15 to 20 miles. He maintained the latter speed as he went past the group of boys on his left side at a distance of two or three feet from them, leaving room between his right-hand side and the railing.

"3. The children were occupying part of the bridge on the left side of the vehicle. The operator had seen and observed them from a distance of about 100 meters before entering the bridge, and had been able to notice their activity.

"4. Two automobiles traveling in opposite directions can hardly go across this narrow bridge. For this reason they prefer to stop in order not to pass by a car traveling in the opposite direction.

"5. The children continued to push each other as the vehicle in question went past them. A dark one, who had in turn been pushed more or less simultaneously, pushed the injured boy, plaintiff herein, throwing him against the left side of the pickup which was passing by at a very short distance.

"6. The force or momentum of the moving vehicle hurled the child Crescencio Alejandro Ramírez against the left metal railing of the bridge, as an immediate result of which the child lay on the ground unconscious, bleeding through the ears, nose, and a wound on the left mastoid region behind the external ear.

"7. The driver, codefendant Ángel M. Franqui, saw when they pushed Crescencio against his vehicle, heard a light blow when the small child hit against the pickup, and swerved to the right and stopped a few feet ahead.

"8. The injured child, still unconscious, was removed to the municipal hospital of Caguas where he recovered consciousness afterwards. He was hospitalized six days under observation. The attending physician, Dr. Francisco Rivera Cestero, determined that he had a slight injury on the left knee and that according to X-ray examinations he did not suffer any skull fracture. However, according to the medical diagnosis the child suffered a serious brain contusion and a wound two inches long on the mastoid region behind the left ear, where they took six or seven stitches. The medical findings point to a possibility that the hemorrhage by the ears and nose was the result of a fracture on the skull base of such a nature that the X-rays examination could not reveal.

"9. After the period of hospitalization the child continued to receive medical treatment, mainly observation, for approximately another week. During that week and thereafter the child continued to recover.

"10. At the time of the accident Crescencio was in the second grade of elementary school. Owing to the unfortunate accident in which he was involved, he was absent from school for about three weeks. Until the date of the accident and while he was in the second grade, he was a bright and very efficient student with an A average in his grades, and he was being considered by the teacher for a scholarship for his efficiency, good attitude and capacity as a student. After the accident and during the second semester of that year the child's disposition and behavior in the classroom changed; he lost liveliness, seemed reserved, absent-minded; he did not seem to hear well and the teacher had to change him to a front seat in the classroom. His average grades went down to B. On a certain occasion he fainted in the classroom. Yet, he passed the grade and the following year he went to third grade.

"11. After the accident the child has frequently complained of headaches, has shown signs of some emotional disturbance connected with the accident; the memory disturbs him and makes him cry. (In the course of the trial plaintiff had to cut short his testimony because he started to cry very much.)

"12. Compensation for the damages sustained by plaintiff consisting in physical damages, pains, sufferings, mental anguish and anxiety, is assessed at two thousand dollars ($2,000)."

In their short brief appellants discuss jointly the three assignments of error. We have studied them carefully in the light and circumstances determined by the trier. In our opinion, none of them was committed.[1]

■ From the facts recited by the trial judge we find no basis to conclude that the accident was unavoidable; in other words, that the danger or damage could not be foreseen or prevented. Chauffeur Franqui was operating during daytime a pickup vehicle belonging to his employer along the Caguas-Aguas Buenas public highway; he approached a narrow concrete bridge with metal railings; from a distance of 100 meters "he sees and observes" on that narrow bridge by which he must pass a group of about eight boys of tender age, among whom was the plaintiff child, nine years of age, "quarreling, calling each other insulting words, pushing each other, and moving constantly"; as he approached the bridge the only precaution taken was to reduce the speed of 30 miles to 15 to 20 miles, as stated by the court, or to 10 or 15 miles, as alleged by appellants; the bridge is so narrow that "two automobiles traveling in opposite directions can not go by," and for that reason the approaching vehicles stop in order to yield the right of way to those which have already entered. The vehicle did not stop; it proceeded "alongside the children," who also "continued to push each other" despite the presence of the vehicle; "the driver ... saw when they pushed Crescencio against his vehicle, heard a light blow when the small child hit against the pickup, then swerved to the right and stopped a few feet ahead."

---

[1] After considering this appeal we are under the impression that the judgment, as respects the amount awarded for damages, was to a certain extent favorable to appellants if we consider that the serious consequences of the accident warranted the award of the total amount claimed in the complaint.

In our opinion, the conclusions of law of the trial court, from which we cite the following, are correct:

"3. The facts and circumstances established in this litigation constitute in law a basis indicative of negligence attributable to codefendant Ángel M. Franqui, imposing on defendant the obligation to compensate solidarily and jointly plaintiff Crescencio Ramírez for the damages sustained by him (§ § 1802 and 1803 of the Civil Code, 1930 ed., 31 L.P.R.A. § § 5141 and 5142).

"4. The evidence in the case, jointly with the applicable law and authorities, do not lead to an inference of recklessness and negligence on the part of plaintiff or of third persons in connection with the damages sustained by him.

"In this case the court considers a situation in which, in its opinion, the driver was bound to exercise greater precaution and diligence than that which he actually exercised. The children's activity which he was able to notice and observe sufficiently in advance at the place of the occurrence points to a clear potential danger which called for the adoption of stricter measures for the protection and safety of these children who were playing within the limited space of a narrow bridge by which the vehicle operated by Franqui necessarily had to travel, at a very short distance from them. The court is of the opinion that the driver was bound to travel alongside the children at the minimum speed permitted by the motor vehicle, or at a lesser speed than that at which he did. The court concludes that the momentum of the vehicle operated by Franqui, the 15 or 20 miles alleged, was precisely the force which hurled the injured child against the metal railing of the bridge, with the aforesaid results. The driver was also bound to exercise greater care while traveling so close to those children. If these additional precautions had been taken, the accident itself or its serious consequences could have been prevented. The court is of the opinion that the speed at which Franqui was traveling under the circumstances described was the proximate and immediate cause of the damages sustained by plaintiff."

In its decision the respondent court cited § 17(a) of the Traffic Act as it stood at the time of the accident, and our decisions in *Alvarez v. Hernández*, 74 P.R.R. 460 (1953); *Díaz v. Stuckert Motor Co.*, 74 P.R.R. 486 (1953); *Irizarry*

v. *People*, 75 P.R.R. 740 (1954) ; and *Castro* v. *González*, 58 P.R.R. 369 (1941).

Appellants maintain that those cases were decided on the basis of situations of fact different from that herein, and that in *Quiñones* v. *Hernández*, 83 P.R.R. 206 (1961), we limited the application of the doctrine in the *Alvarez* case, *supra*, to "extreme and unusual situations."

Section 17 (a) *supra* contains the general norm which imposes on persons operating vehicles on public highways the duty to exercise "at all times" due care and take reasonable precautions to insure the safety of persons and property. The violation of this precept by the chauffeur in this case is evident. Proceeding along the narrow bridge occupied by children in constant motion was not a measure of care nor of reasonable precaution, but rather reckless and dangerous for those children.

This is not a case in which the injured person has been occupying prior thereto a place of safety and who unexpectedly abandons the same and rushes onto a moving vehicle, a situation which was present in the cases commented in the briefs and in a majority of those cited by the trier. Here the group of children—not older than nine years—is in the very midst of the danger; situated within the metal railings of a narrow bridge, with two entrances through which they could escape, playing and pushing each other heedlessly and forgetting everything else except their fun and companions, with only one exit left for running away from the place of danger as the chauffeur drove the vehicle by the bridge.

In the *Alvarez* case, 74 P.R.R. 460, in which the situation was not so dangerous nor were there such few means of defense, we said at p. 466:

"The conduct and the movements of the children on the sidewalk entailed a potentially dangerous situation. They were not standing fixedly on the sidewalk nor under the custody or pro-

tection of an adult. They were playing, running and pushing each other. This implied that the driver could reasonably anticipate that one of the children might rush onto the street as a result of their childish games. There was the reasonable probability that one of the children might leave the sidewalk and rush onto the street. The children's conduct made that risk possible and the driver was bound, reasonably, to anticipate that said inherently dangerous situation might materialize by way of some sudden movement of a child onto the street. Negligence depends on risks and is the result of the failure to exercise the duty of acting carefully when facing a dangerous situation. If a specific dangerous conduct may be anticipated, this gives rise to the duty of acting carefully. The unavoidable accident doctrine requires in its application to cases as the one at bar, that the victim's conduct be unexpected. If said conduct could be reasonably anticipated and the driver of the vehicle has had the opportunity to control and drive the automobile in such a manner that the accident might have been avoided, this results in liability."

The trier did not err in considering and applying that doctrine as far as possible in deciding the case. We have no doubt that the situation present at that narrow bridge as the driver approached the same constituted "an extreme and unusual situation," for the purposes of the public traffic at that place to which reference is made in the case of *Quiñones* v. *Hernández, supra.*

Even assuming that the trier applied incorrectly those decisions, we would have upheld his judgment in the light of the attendant circumstances and the provisions of §§ 1802 and 1803 of the Civil Code.

In view of the foregoing, the judgment will be affirmed.